IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL DOCKET** |
| **VS.** | * | |
| | * | **No. 23-163** |
| **CHARLES CUNIGAN** | * | |
| | * | **SECTION A** |
| | * | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now defendant Charles Cunigan who, through undersigned counsel, respectfully submits this memorandum in support of his position at sentencing. Mr. Cunigan has pled guilty and accepted responsibility for his actions. He offers this additional information not to excuse his actions but to provide additional, relevant context for this Court.

**INTRODUCTION**

Charles Cunigan was born on May 6, 1993. He was raised by his mother, Carmela Hayes, in the Walker Homes neighborhood in Memphis, Tennessee. As a single parent, his mother struggled to support them on her own and, at times, had to rely on assistance from her parents, Annie and Johnnie Hayes. Their neighborhood was full of gang members, drug dealers and drug addicts and from an early age, Mr. Cunigan was exposed to violence, drugs and gang activity on a daily basis.

With a 270 month sentence, Mr. Cunigan will serve more than two decades in prison and he will be in his fifties when he is released. Available data indicates that by the time Mr. Cunigan is released, he will have "aged out" of criminal activity and it is unlikely that he will recidivate. For these reasons, an evaluation of Mr. Cunigan's circumstances under 18 U.S.C. 3553(a) demonstrates that a sentence of 270 months is sufficient and adequately serves the goals of sentencing.

**I. A SENTENCE OF 270 MONTHS IS SUFFICIENT AND ADEQUATELY TAKES INTO ACCOUNT MR. CUNIGAN'S LIFE HISTORY, PARTICULARLY HIS EXPOSURE TO TRAUMA AND VIOLENCE THROUGHOUT HIS CHILDHOOD.**

Charles Cunigan was born to Carmela Hayes and Charles Cunigan, Sr. on May 6, 1993. Ms. Hayes was a struggling single mother and raised Mr. Cunigan in the Walker Homes neighborhood in Memphis, Tennessee. On occasion, Ms. Hays left her son in the care of her parents while she worked. The neighborhood Mr. Cunigan grew up in was plagued with drugs and gang violence. It was full of gang members, drug dealers and drug addicts. Gun violence was common and, as a young child, Mr. Cunigan would often be woken from his sleep by the sound of gunshots. During a walk to the store in his neighborhood, it was routine to hear gunshots and drive-by shootings in the middle of the day.

When Mr. Cunigan was about 3 or 4 years old, his mother began dating Monique Smith, a gang member and drug trafficker who later became involved in sex trafficking. Mr. Smith provided financial support to Ms. Hayes, helped raise Mr. Cunigan and, by all accounts, Mr. Cunigan considered him a father figure. Even after his relationship with Ms. Hayes ended, Smith continued to have an influential role in Mr. Cunigan's life. It was Smith who introduced

Mr. Cunigan to drugs, violence and, ultimately, sex trafficking. Smith is currently serving a life sentence in federal court for his leadership role in the Vice Lords operations in Tennessee.

Shortly after her relationship with Smith ended, Ms. Hayes became involved with Fred Wooten, a violent and abusive man. On one occasion, when Mr. Cunigan was only 5 or 6 years old, Wooten brutally attacked Ms. Hayes. Mr. Cunigan was at home and witnessed this incident. Ms. Hayes suffered a broken jaw and severe head injuries from being hit with a gun. After police investigation, Wooten was sent to jail.[1]

The first time Mr. Cunigan witnessed someone being shot he was at a skating rink with friends. When the shooting began, Mr. Cunigan and his friends, along with everyone else, fled to get out of harm's way. There was blood everywhere and a car outside had also been shot up. Around that same time, Mr. Cunigan was shot in the back and a few years later, he was shot in the leg. Both shootings required hospitalization.

Mr. Cunigan lost his maternal grandmother, Annie Hayes, who had helped raise him, in 2012 and the following year his maternal grandfather, Johnnie Hayes died. Two years later, in 2015, Mr. Cunigan's best friend, Akeem Wilkins, was shot to death. The man accused of killing him was acquitted. In 2019, Mr. Cunigan's maternal half-sibling, Terrell Seay, was shot to death.

It is by now beyond question that exposure to violence and trauma in childhood can lead to criminal activity. U.S. Department of Justice and Office of Juvenile Justice Delinquency

---

[1] Despite her injuries, Ms. Hayes recovered and was eventually able to put herself through nursing school. She is now employed as a nurse. Mr. Cunigan remains very close to his mother and she has continued to support him since his arrest.

Prevention*, Combatting Violence and Delinquency, Break the Cycle of Violence by Addressing Youth Victimization, Abuse and Neglect*, Ch. 5, 66 (1996) ("Risk factors, such as community disorganization, availability of drugs and firearms, and persistent poverty, make children more prone to involvement in delinquent behavior than if those factors were not present. Additionally, when a child's family life is filled with violence, problem behaviors, poor parental monitoring, and inconsistent disciplinary practices or maltreatment, a child's risk of delinquency increases."), available at https://www.ojp.gov/pdffiles/jjplanfr.pdf.

"Trauma experienced during childhood may result in profound and long-lasting negative effects that extend well into adulthood.  The direct effects may be psychological, behavioral, social, and even biological.  These effects are associated with longer-term consequences, including risk for further victimization, delinquency and adult criminality, substance abuse, poor school performance, depression, and chronic disease."  Phelan Wyrick and Kadee Atkinson, *"Examining the Relationship Between Childhood Trauma and Involvement in the Justice System,"* NIJ Journal 283, October 2021, available at https://nij.ojp.gov/topics/articles/examining-relationship-between-childhood-trauma-and-involvement-justice-system.  Mr. Cunigan has never received any treatment or counselling for the trauma he was exposed to as a child.  He would benefit greatly from a mental health assessment, trauma informed counselling and any other treatment that is recommended and made available to him.

For all of these reasons, a sentence of 270 months is sufficient.  It adequately considers the nature and circumstances of the offense, and Mr. Cunigan's history and characteristics, particularly his exposure to community violence, gang activity, and drug activity, including that

perpetuated by the only father figure in his life, and the multiple traumas he witnessed and was exposed to as a child, including the horrific beating of his mother at the hands of a partner, the murder of his best friend and the murder of his brother.

**II. A SENTENCE OF 270 MONTHS SATISFIES THE PUNITIVE, DETERRENT, PROTECTIVE AND REHABILITATIVE GOALS OF SENTENCING BECAUSE MR. CUNIGAN WILL BE IN HIS FIFTIES WHEN HE IS RELEASED AND UNLIKELY TO RECIDIVATE.**

According to the Council on Criminal Justice, "one of the most well-established facts in criminology" is that people "age out" of crime. Council on Crime Statistics, *"Recidivism Rates: What You Need to Know."* In a report analyzing the impact of aging on recidivism, the United States Sentencing Commission concluded that "older offenders are substantially less likely to recidivate following release compared to younger cohorts. …Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average." USSC, *"The Effects of Aging on Recidivism"*, Dec. 2017.

In addition, research has demonstrated that lengthening an already long prison sentence has little to no effect on violent crime. See, for example, John J. Donohue III, *Assessing the Relative Benefits of Incarceration: Overall Changes and the Benefits on the Margin* in *Do Prisons Make Us Safer?* 269, 274, 301-02 (Steven Raphael & Michael A. Stoll eds., 2009) (showing diminishing marginal returns for additional incarceration).

The punitive, deterrent, protective and rehabilitative purposes of sentencing are important considerations for this Court and available data suggests that when Mr. Cunigan is released, he is unlikely to recidivate, particularly if he is provided with counselling and treatment for his trauma. A sentence of 270 months is adequate to meet all of these goals of sentencing.

## CONCLUSION

A sentence should be "sufficient, but not greater than necessary" to accomplish the goals set forth in 18 U.S.C. § 3553(a). The court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Section 3553 (a)(1). It must consider and impose a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law, and" "provide[s] just punishment for the offense." Section 3553(a)(2)(A). The sentence must "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." Section 3553(a)(2)(B) and (C).  Considering Mr. Cunigan's life history, particularly his childhood exposure to trauma, and the data suggesting that it is unlikely that Mr. Cunigan will recidivate, a sentence of 270 months is adequate to meet the goals of sentencing.

New Orleans, this 7th day of January, 2025.

Respectfully submitted,

*/s/ Carol Kolinchak*
CAROL A. KOLINCHAK, ESQ.
La. Bar No. 22495
2563 Bayou Road, 2nd Floor
New Orleans, Louisiana 70119
Telephone:  (504) 259-8395
cakolinchak@gmail.com

Counsel for Charles Cunigan

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record on the 7th day of January, 2025.

*/s/ Carol A. Kolinchak*
Carol A. Kolinchak
